IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLEN MARGULIES, JOHN OLSEN,
and STEPHEN FUNG, individually,
and CHRISTOPHER DAY and THOMAS
GOLDHAMMER, individually and as
class representatives,

                Plaintiffs,                3:13-cv-00475-PK

v.                                              OPINION AND ORDER

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT
OF OREGON,

                Defendant.

PAPAK, Magistrate Judge:

       Plaintiffs filed the instant action against defendant Tri-County Metropolitan Transportation District of Oregon ("TriMet"), alleging that TriMet engages in a pattern or practice of failing to pay its bus and train operators for all compensable work, including overtime

Page 1 - OPINION AND ORDER

pay, in violation of the federal Fair Labor Standards Act ("FLSA") and Oregon law. Now before the court is TriMet's motion for partial summary judgment (#120). For the reasons discussed below, the motion is granted in part and denied in part.

## BACKGROUND

On December 19, 2012, plaintiff Allen Margulies sent a letter to TriMet, indicating that he intended to file a lawsuit "on behalf of all current employees and former employees of TriMet" due to TriMet's failure to compensate its employees for all hours worked and its failure to pay overtime wages. Ex. A, Declaration of Joel B. Young ("Young Decl."), #124-1, at 1-9. The caption of the letter states that it is a notice of a class action pursuant to Oregon Rule of Civil Procedure 32H. *Id.* at 1. On January 14, 2013, plaintiffs Stephen Fung and Christopher Day also sent TriMet a notice of their intent to file an action "on behalf of all current and former employees of TriMet." Ex. C, Young Decl., #124-1, at 1-9. Like Margulies's letter, Fung and Day cited TriMet's failure to compensate its employees for all hours worked and its failure to pay overtime wages as the basis of the class action. *Id.* On January 17, 2013, TriMet responded to both letters, stating that, as public employees, Margulies, Fung, and Day were subject to a collective-bargaining agreement, which governed the wage issues raised in the letters. Ex. B, Young Decl., #124-1, at 1; Ex. D, Young Decl., #124-1, at 1.

Thereafter, on January 22, 2013, Margulies filed an action against TriMet in the Circuit Court for the County of Multnomah, alleging various claims under the FLSA and Oregon law on behalf of himself and "all other similarly situated individuals currently and/or formerly employed by" TriMet. Ex. 3, Declaration of Jennifer Goodrich ("Goodrich Decl."), #122-3, at 1. On February 15, 2013, Margulies filed an amended complaint in the Circuit Court for the County of

Page 2 - OPINION AND ORDER

Multnomah, adding Day and John Olsen as named plaintiffs. Ex. 4, Goodrich Decl., #122-4, at 1. On February 21, 2013, plaintiffs served TriMet with a copy of the complaint and the amended complaint. Ex. 5, Goodrich Decl., #122-5, at 1-3.

TriMet subsequently removed the case to this court on the basis of federal-question and supplemental jurisdiction. Notice of Removal, #1, at 1-5. Plaintiffs filed their second amended complaint on June 17, 2013, alleging that TriMet fails to pay bus and train operators for: "(1) non-commute travel time between disparate start and end points of operators' scheduled runs, (2) the differential between scheduled run times and actual run times, (3) pre-departure time, (4) mandatory meetings with supervisors, (5) mandatory medical examinations, and [(6)] any applicable overtime due for such compensable time." Second Amended Complaint, #18, ¶ 4. Plaintiffs allege claims under the FLSA (Claim I); Oregon's minimum-wage law, Oregon Revised Statute ("ORS") § 653.025 (Claim II); Oregon's overtime-pay law, ORS § 653.268 (Claim III); and Oregon's timely-wage-pay law, ORS § 652.120 (Claim IV). Plaintiffs further allege that TriMet's violation of Oregon law was willful, in violation of ORS § 652.140 (Claim V).

On October 10, 2013, the court granted TriMet's first motion for partial summary judgment and dismissed plaintiff-bus operators' FLSA claims. October 10, 2013 Opinion and Order, #61, at 40. The court also granted plaintiffs' motion to conditionally certify the action as a representative collective action under 29 U.S.C. § 216(b). *Id.* To date, 458 plaintiffs have opted to join the action, including the five named plaintiffs.[1] On January 22, 2014, the court granted

---

[1] In the motion for partial summary judgment, TriMet states that 457 plaintiffs, including the five named plaintiffs, have opted to join the lawsuit. It appears, however, that TriMet names Roberto Silva on its list of plaintiffs twice and did not include Robert C. DePew, who filed a

Page 3 - OPINION AND ORDER

the parties' stipulated motion to dismiss the minimum-wage claims. *See* January 22, 2014 Minute Order, #108. Thus, the following claims remain: (1) plaintiff-train operators' FLSA and state-law overtime and untimely-wage-pay claims; and (2) plaintiff-bus operators' state-law overtime and untimely-wage-pay claims.

On April 4, 2014, TriMet filed the instant motion for partial summary judgment, seeking summary judgment in its favor on ninety-three plaintiffs' state-law claims. *See* TriMet's Motion for Partial Summary Judgment, #120. On April 28, 2014, plaintiffs filed their resistance. *See* Plaintiffs' Resistance, #124. On June 12, 2014, TriMet filed its reply in support of the motion for partial summary judgment. *See* TriMet's Reply, #127. The court heard oral argument on the motion on June 25, 2014. The matter is fully submitted and ready for decision.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable

---

consent-to-join form on November 19, 2013, and Leurine Jackson, who filed a consent-to-join form on February 26, 2014.

inferences in favor of the nonmoving party and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990).

## DISCUSSION

TriMet seeks summary judgment on ninety-three plaintiffs' state-law claims. TriMet contends that summary judgment is appropriate because these plaintiffs did not provide timely notice of their claims as required by the Oregon Tort Claims Act ("OTCA"). Plaintiffs respond that their claims are not "torts" within the meaning of the OTCA and, even if they were, the ninety-three plaintiffs at issue provided the requisite notice by virtue of Margulies's December 19, 2012 letter to TriMet. I begin by reviewing the relevant provisions of the OTCA before addressing the central questions at issue—that is, whether plaintiffs' claims are torts subject to the OTCA's requirements and, if so, whether the ninety-three plaintiffs TriMet identifies in its motion complied with the OTCA's notice provision.

### I. OTCA's Framework

A plaintiff filing a tort claim against a public body must comply with the provisions of the OTCA. *See* ORS § 30.265(1). For purposes of the OCTA, a "tort" is defined as

> the breach of a legal duty that is imposed by law, other than a duty
> arising from contract or quasi-contract, the breach of which results
> in injury to a specific person or persons for which the law provides
> a civil right of action for damages or for a protective remedy.

ORS § 30.260(8). A "public body" includes, among other entities, a municipal corporation. ORS § 30.260(4).

Relevant to the instant dispute is the OTCA's requirement that a plaintiff may not

Page 5 - OPINION AND ORDER

maintain an action against a public body "unless notice of [the] claim is given." ORS § 30.275(1). The notice requirement is "mandatory . . . and a condition [precedent] to recovery" under the OTCA. *Urban Renewal Agency of City of Coos Bay v. Lackey*, 275 Or. 35, 40, 549 P.2d 657, 660 (Or. 1976). "The purpose of the notice requirement of ORS [§] 30.275 is to allow the public body an opportunity to investigate a matter promptly and to settle all meritorious claims without litigation." *Flug v. Univ. of Or.*, 170 Or. App. 660, 671, 13 P.3d 544, 551 (Or. Ct. App. 2000) (citing *Robinson v. Shipley*, 64 Or. App. 794, 797, 669 P.2d 1169, 1171 (Or. Ct. App. 1983)); *accord Urban Renewal Agency*, 275 Or. at 41, 549 P.2d at 660.

A plaintiff satisfies the OTCA's notice requirement if, "within 180 days after the alleged loss or injury," ORS § 30.275(2)(b), the plaintiff gives formal notice, actual notice, or commences an action on the claim, ORS § 30.275(3). The notice must include: (1) a "statement that a claim for damages is or will be asserted against the public body"; (2) a "description of the time, place and circumstances giving rise to the claim, as far as known to the claimant"; and (3) the "name of the claimant and the mailing address to which correspondence concerning the claim may be sent." ORS § 30.275(4). "When the purposes of the notice requirement have been met, the court may use the theory of substantial compliance to ignore technical errors in notices otherwise proper in form and content, avoiding the harsh results of insisting on strict compliance with the statute." *Robinson*, 64 Or. App. at 797, 669 P.2d at 1171; *see also Urban Renewal Agency*, 275 Or. at 40, 549 P.2d at 660 (noting that "substantial compliance" with the notice requirement is sufficient).

**II.     Does OTCA Apply?**

In this case, TriMet contends that plaintiffs' state-law claims are subject to the OTCA

Page 6 - OPINION AND ORDER

because TriMet is a "public body" and plaintiffs' state-law claims are "torts." Thus, TriMet maintains that plaintiffs must establish compliance with the OTCA's notice provision. Plaintiffs do not dispute that TriMet is a "public body" within the meaning of the OTCA[2] but contend that the OTCA does not apply to their state-law claims because such claims are more properly characterized as contract claims, which are expressly excluded from the OTCA. Both parties acknowledge that the Oregon Court of Appeals held in *Butterfield v. State*, 163 Or. App. 227, 987 P.2d 569 (Or. Ct. App. 1999), *denying review*, 330 Or. 252, 6 P.3d 1099 (Or. 2000), that a claim under the FLSA is a tort claim, thus requiring compliance with the OTCA's notice provision. In their resistance, however, plaintiffs argue that this court is not bound to accept the Oregon Court of Appeals' analysis in *Butterfield*. Because of its import to this case, I begin by examining the decision in *Butterfield*.

### A. *Butterfield v. State*

In *Butterfield*, the plaintiffs sued their employer, the State of Oregon, arguing that they were owed overtime wages under the FLSA. *Butterfield*, 163 Or. App. at 230, 987 P.2d at 570. The State of Oregon moved for summary judgment on the basis that the plaintiffs had failed to comply with the OTCA's notice requirement. *Id.* at 231, 987 P.2d at 571. The plaintiffs responded that the OTCA was "inapplicable because the state's duty to pay overtime [arose] out of employment contracts" and contract actions are expressly excluded from the OTCA's definition of a tort. *Id.* at 232, 987 P.2d at 571 (emphasis omitted). After reviewing the relevant

---

[2] *See Griffin v. Tri-County Metro. Transp. Dist. of Or.*, 318 Or. 500, 503, 870 P.2d 808, 809 (Or. 1994) ("Defendant Tri-County Metropolitan Transportation District of Oregon (Tri-Met) is a municipal corporation that is subject to the Oregon Tort Claims Act (OTCA)." (citation omitted)).

Page 7 - OPINION AND ORDER

Oregon Supreme Court case law, the Oregon Court of Appeals disagreed with the plaintiffs' contention. *Id.* at 238, 987 P.2d at 574-75. The court first noted that the plaintiffs did not purport to rely on any term contained in their employment contracts; rather, their claims were based on alleged violations of the FLSA. *Id.* at 234, 987 P.2d at 573. The court went on to state that, when the legislature intends for a statute to become part of a contract, the legislature expresses this intention in the statute. *Id.* at 236, 987 P.2d at 574. For instance, the court noted that "the [Oregon] legislature requires certain statutory requirements to be expressed in insurance policies." *Id.*, 987 P.2d at 574. The court, however, found no such legislative intent in the FLSA. *Id.*, 987 P.2d at 574. Finally, the court concluded that there was no evidence that plaintiffs were "induced to enter into their employment relationship because of the provisions of the FLSA or that its provisions [were] part of a bargained-for consideration in exchange for their performance." *Id.* at 238, 987 P.2d at 575. Thus, the Oregon Court of Appeals held that the plaintiffs' FLSA claims were tort claims subject to the OTCA and, accordingly, the plaintiffs were required to comply with the OTCA's notice provision. *Id.*, 987 P.2d at 575.

In a dissenting opinion, Judge Rex Armstrong sharply disagreed with the majority's holding and instead concluded that an action under the FLSA is a contract action and, thus, not subject to the OTCA. Judge Armstrong reasoned that the FLSA is part of every employment contract because its provisions establish minimum terms with regard to payment of wages. *Id.* at 239, 987 P.2d at 575 (Armstrong, J., dissenting). Judge Armstrong noted that, prior to the passage of the Portal-to-Portal Act establishing a federal statute of limitations applicable to FLSA claims, federal courts consistently held that a state's statute of limitations for contract actions governed FLSA claims. *Id.* at 239-41, 987 P.2d at 575-76. Moreover, Judge Armstrong

Page 8 - OPINION AND ORDER

argued that Oregon law supported a finding that a FLSA claim is based on contract; specifically, Judge Armstrong noted that, under Oregon law, "it is well established that the applicable law of the land becomes part of every contract." *Id.* at 241, 987 P.2d at 576. Thus, Judge Armstrong concluded that, because the plaintiffs' FSLA claims were based in contract, not tort, the OTCA did not apply and, thus, plaintiffs failure to give notice was not fatal to their claims. *Id.* at 243, 987 P.2d at 577.

### B. Does *Butterfield* Govern?

Plaintiffs contend that *Butterfield* does not compel dismissal of their state-law claims for two reasons. First, plaintiffs suggest that the analysis in *Butterfield* is inapplicable because it addressed claims under the FLSA rather than Oregon's statutes governing overtime pay, regular wage payment, and wage payment on termination—the statutory provisions at issue here. I disagree. While the *Butterfield* majority did not specifically address Oregon law, it broadly held that, because the plaintiffs were not relying on any duty imposed by their employment contracts and, rather, were relying on an independent duty imposed by a statute, their claims were tort claims and not contract claims. Because there is nothing indicating that *Butterfield*'s analysis must be limited to claims under the FLSA, I find that *Butterfield*'s analysis applies.

Next, plaintiffs contend that, even if *Butterfield*'s analysis applies, the court is not obligated to follow *Butterfield*'s holding. "[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) (alteration in original) (quoting *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001)) (internal quotation marks omitted); *see also Estrella v. Brandt*, 682

Page 9 - OPINION AND ORDER

F.2d 814, 817 (9th Cir. 1982) (noting that a federal court should follow a state intermediate appellate court decision "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise" (citation omitted) (internal quotation mark omitted)). A federal court's mere disagreement with the state intermediate appellate court decision is an insufficient basis for not following the decision. *Ryman*, 505 F.3d at 995. Rather, the federal court must cite evidence that the state supreme court would have decided the issue differently. *Id.*

Here, plaintiffs argue that there is convincing evidence that the Oregon Supreme Court would decide the present issue differently. Specifically, plaintiffs argue that the dissenting opinion in *Butterfield* is well-reasoned, the parties in *Butterfield* did not adequately brief the issues, and, as Judge Armstrong noted in his dissenting opinion, federal courts have found that FLSA claims are contract claims for the purpose of determining what state statute of limitations to apply. Plaintiffs maintain that, in light of the well-established principle that "the applicable law of the land becomes part of every contract," the "stronger argument" is that claims under Oregon's wage-and-hour laws are contract claims. Plaintiffs' Resistance, #124, at 4, 10.

While I agree with plaintiffs that Judge Armstrong's dissenting opinion is well-reasoned and that the weight of federal law supports a conclusion that FLSA actions are contractual in nature, I am not convinced that the Oregon Supreme Court would disaffirm *Butterfield*. Indeed, the limited evidence available suggests that the Oregon Supreme Court would follow the *Butterfield* majority's holding that FLSA claims are tort, rather than contract, claims. First, in *Butterfield*, the Oregon Supreme Court denied the plaintiffs' petition for review. While this is certainly not dispositive, it suggests that the Oregon Supreme Court found no serious error in the

Page 10 - OPINION AND ORDER

Oregon Court of Appeals' decision. *See Ryman*, 505 F.3d at 995 & n.2 (finding that the district court failed to cite to clear and convincing evidence that the Oregon Supreme Court would disagree with an Oregon Court of Appeals' decision, noting that, "[a]lthough not dispositive," the Oregon Supreme Court declined to review the Oregon Court of Appeals' decision).

Second, as the *Butterfield* majority explains, prior to Congress's creation of a federal statute of limitations for FLSA actions, the Oregon Supreme Court decided in *Fullerton v. Lamm*, 177 Or. 655, 163 P.2d 941 (Or. 1945), that the statute of limitations applicable to actions "upon a liability created by statute" governed FLSA actions, rather than the statute of limitations applicable to contract actions. *Butterfield*, 163 Or. App. at 233-34, 987 P.2d at 572 (quoting *Fullerton*, 177 Or. at 661, 163 P.2d at 944). While plaintiffs, as well as the dissenting opinion in *Butterfield*, persuasively argue that *Fullerton* should be given limited weight as the Oregon Supreme Court's rejection of the statute of limitations applicable to contract actions was dictum that had no bearing on the court's ultimate conclusion, I nevertheless find that it is of some relevance in determining how the Oregon Supreme Court might decide the issue presented in this case.

Finally, I note that the Oregon Court of Appeals has since affirmed *Butterfield*'s conclusion and, once again, the Oregon Supreme Court has denied review. *See Jenkins v. Portland Hous. Auth.*, 260 Or. App. 26, 30-32, 316 P.3d 369, 372 (Or. Ct. App. 2013) (finding that an action seeking damages under the habitability provisions of the Oregon Residential Landlord and Tenant Act was a tort action because the defendant's duty to the plaintiff arose from the statute, not the rental agreement), *denying review*, 355 Or. 380, 328 P.3d 696 (Or. 2014); *see also Byrd v. Oregon State Police*, 236 Or. App. 555, 558, 238 P.3d 404, 405 (Or. Ct. App. 2010)

Page 11 - OPINION AND ORDER

(citing *Butterfield* for the proposition that FLSA claims are tort claims subject to the OTCA).

In light of the foregoing, I find that, while I may disagree with the majority's decision in *Butterfield*, there is not clear and convincing evidence that the Oregon Supreme Court would disaffirm *Butterfield*. *See Ryman*, 505 F.3d at 995 (noting that a federal court's mere disagreement with the state intermediate appellate court decision is an insufficient basis for not following the decision). To the contrary, the limited evidence available suggests that the Oregon Supreme Court would adopt *Butterfield*'s holding. Although *Butterfield* addressed FLSA claims, its analysis applies with equal force to claims under ORS §§ 653.268, 652.120, and 652.140. Thus, consistent with *Butterfield*, I find that plaintiffs' state-law claims are torts within the meaning of the OTCA and, therefore, plaintiffs were required to comply with the OTCA's notice provision.

### III.  Did Plaintiffs Comply with OTCA's Notice Requirement?

Having determined that the OTCA's notice provision applies, I must now determine whether plaintiffs provided the requisite notice. Defendants contend that, of the 458 plaintiffs that have opted to join the lawsuit, ninety-three plaintiffs failed to provide timely notice. Plaintiffs respond that Margulies's December 19, 2012 letter served as notice on behalf of all plaintiffs and, thus, the ninety-three plaintiffs TriMet identifies complied with the notice requirement.

As an initial matter, I find that Margulies failed to give timely notice. According to TriMet's records, which plaintiffs do not contest, Margulies retired on May 13, 2012. *See* Ex. 7, Goodrich Decl., #122-7, at 1. Thus, under the continuing-tort theory that TriMet adopts in its

motion,[3] Margulies could not have been injured or suffered loss after May 13, 2012. The earliest date that Margulies could have provided notice of his tort claim was December 19, 2012—the date that he sent the letter to TriMet regarding his intent to file a class action—which is well after the expiration of the OTCA's 180-day notice period. *See* Ex. A, Young Decl., #124-1, at 1. Accordingly, I find that, because Margulies failed to provide timely notice as required under ORS § 30.275, TriMet is entitled to judgment in its favor on Margulies's claims under ORS §§ 653.268, 652.120, and 652.140.

I likewise conclude that, because December 19, 2012, is the earliest date that any plaintiff could have arguably provided notice, any plaintiff who ceased working as a bus or train operator prior to June 22, 2012—that is, 180 days prior to December 19, 2012—failed to provide timely notice under the OTCA. TriMet is therefore entitled to summary judgment in its favor on the state-law claims asserted by the sixty-four plaintiffs who ceased working as a bus or train operator prior to June 22, 2012.[4] *See* Ex. 7, Goodrich Decl., #122-7, at 1-3.

The more difficult question is whether Margulies's December 19, 2012 letter satisfies the notice requirement for the remaining twenty-eight plaintiffs identified in TriMet's motion. TriMet argues that ORS § 30.275 does not permit notice on behalf of a class, as evidenced by the

---

[3] *See* TriMet's Memo. in Support of Motion for Partial Summary Judgment, #121, at 8 (citing *Barns v. City of Eugene*, 183 Or. App. 471, 475, 52 P.3d 1094, 1096 (Or. Ct. App. 2002)).

[4] In their resistance, plaintiffs argue at great length that, although streetcar operators are technically employed by Portland Streetcar, Inc., TriMet is liable for streetcar operators' wage claims under the economic-realities test. The import of this argument is not clear. Plaintiffs' overtime and related wage claims, as pleaded in the second amended complaint, are limited to bus and train operators. Thus, the last date that any plaintiff was injured or damaged by TriMet's alleged wrongdoing is the date that he or she stopped working as a bus or train operator. It is of no consequence whether a plaintiff went on to become a streetcar operator, just as it is of no consequence whether a plaintiff went onto become a station agent or a fare inspector.

Page 13 - OPINION AND ORDER

requirements that the notice include "the time, place and circumstances giving rise to the claim," as well as the "name of the claimant." ORS § 30.275(4). Because the December 19, 2012 letter does not provide any name other Margulies's or the time, place, and circumstances for each plaintiff's claim, TriMet argues that the letter fails to satisfy the notice requirement for the remaining twenty-eight plaintiffs. TriMet instead contends that the remaining plaintiffs did not provide notice until they were either named as a plaintiff in the complaint or filed a consent-to-join form.

In response, plaintiffs contend that TriMet's reading of ORS § 30.275 would foreclose all class actions asserting tort claims against a public body and there is no indication that the legislature intended such a result. Plaintiffs further note that several other state courts have interpreted their respective tort claims acts to allow notice of a class claim. Finally, plaintiffs argue that the December 19, 2012 letter satisfies ORS § 30.275's requirements, as it "specifically identified the labor practices that caused TriMet employees to be unpaid for their work" and noted that the violations were ongoing. Plaintiffs' Resistance, #124, at 19.

First, I agree with plaintiffs that ORS § 30.275 permits a class representative to provide notice on behalf of a class. Among other information, a notice of a claim under ORS § 30.275 must include the "name of the claimant" and a "description of the time, place and circumstances giving rise to the claim, so far as known to the claimant." ORS § 30.275(4). The statute does not define "claim" or "claimant." TriMet offers no persuasive argument as to why "claim" cannot be read to include class claims or why "claimant" cannot be read to refer to a class representative—that is, the individual filing the claim on behalf of the class. *See Budden v. Bd. of Sch. Comm'rs of City of Indianapolis*, 698 N.E.2d 1157, 1162 (Ind. 1998) (finding that, in the

Page 14 - OPINION AND ORDER

context of a class action, the phrase "person making the claim" in the notice provision of the Indiana tort claims act refers to "the named plaintiffs"); *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 457, 525 P.2d 701, 707 (Cal. 1974) (finding that, in the context of a class action, the word "claimant" in the notice provision of the California tort claims act "must be equated with the class itself").

Such a reading is consistent with the legislative intent behind the OTCA. In enacting the OTCA, the Oregon legislature partially waived sovereign immunity, thereby allowing "injured persons to assert—albeit with some limitations—the same tort claims against public bodies that they could, at common law, assert against other tortfeasors." *Vaughn v. First Transit, Inc.*, 346 Or. 128, 136-37, 206 P.3d 181, 187 (Or. 2009). In other words, with the exception of the limitations outlined in the OTCA, the legislature sought to place public bodies on equal footing with all other tortfeasors. Thus, just as a private tortfeasor may be subject to a class action, so too can a public body. Yet TriMet's reading of ORS § 30.275 would have the practical effect of foreclosing such class actions against public bodies. As the Court of Appeals of Washington explained in *Oda v. State*, 111 Wash. App. 79, 44 P.3d 8 (Wash. App. Div. 1 2002):

> It is the very nature of a class action to gather into a single lawsuit a large number of individuals whose names may be unknown to the original parties. The mechanisms that fully identify and notify the members of the class are not available until someone commences the action and then obtained permission to proceed under [Federal Rule of Civil Procedure 23].

*Id.* at 88, 44 P.3d at 12-13. Requiring each individual of a class action to provide notice under ORS § 30.275 would, in effect, preclude any class action alleging tort claims against a public body. I find no evidence that the Oregon legislature intended such a result. *See City of San Jose*,

Page 15 - OPINION AND ORDER

12 Cal. 3d at 457, 525 P.2d at 707-08 (finding that the California tort claims act permits notice on behalf of a class and noting that requiring "detailed information in advance of the complaint would severely restrict the maintenance of appropriate class actions—contrary to recognized policy favoring them").

Thus, having concluded that the OTCA permits notice on behalf of a class, I must consider whether Margulies's December 19, 2012 letter provided such notice. TriMet argues that the notice fails to comply with the requirements under ORS § 30.275, as it

> fails to inform TriMet of the identity of the potential claimants, which of the six possible kinds of wage claims listed in the Second Amended Complaint each unknown claimant might have, the number of overtime hours at issue for each claimant, the amount of unpaid wages each unknown claimant might have for each kind of wage claim that the claimant may assert, when each claimant purportedly was not paid, and other unique circumstances giving rise to each claim that is purportedly encompassed by the notice.

TriMet's Reply, #127, at 10-11. I am not persuaded that ORS § 30.275 requires this level of detail. Indeed, ORS § 30.275 provides only that the notice must include a "description of the time, place and circumstances giving rise to the claim, *so far as known to the claimant*." ORS § 30.275 (emphasis added); *see also Hughes v. City of Portland*, 255 Or. App. 271, 281-82, 296 P.3d 642, 647 (Or. Ct. App. 2013) (noting that ORS § 30.275 does not require a claimant to "give the public body such detailed information that the public body can determine the extent of its potential liability from the face of the notice").[5] Here, the December 19, 2012 letter identifies Margulies, who, at that time, was acting as class representative; it identifies the members of the

---

[5] Under a prior version of the OTCA's notice provision, a claimant was required to specify "the amount of compensation or other relief demanded." *Krieger v. Just*, 319 Or. 328, 336, 876 P.2d 754, 758 (Or. 1994) (discussing the "various changes to the notice requirement" between 1973 and 1981).

Page 16 - OPINION AND ORDER

proposed class (all current and former TriMet employees); it describes in detail TriMet's alleged practice of failing to pay its employees for all compensable time; and it states that TriMet's conduct is ongoing. This information was sufficient to allow TriMet "an opportunity to investigate [the] matter[] promptly and ascertain all necessary facts." *Webb v. Highway Div. of Or. State Dep't of Transp.*, 293 Or. 645, 649, 652 P.2d 783, 785 (Or. 1982) (citing *Urban Renewal Agency*, 275 Or. at 41, 549 P.2d at 660). Thus, I find that the December 19, 2012 letter substantially complies with the OTCA's notice provision and, because the letter provided notice on behalf of the class, the remaining twenty-eight plaintiffs identified in TriMet's motion provided timely notice under the OTCA.

## CONCLUSION

For the reasons set forth above, TriMet's motion for partial summary judgment (#120) is granted in part and denied in part. The sixty-five plaintiffs, including Margulies, who ceased working as a bus or train operator prior to June 22, 2012, failed to provide timely notice under the OTCA and, thus, summary judgment on those plaintiffs' state-law claims is granted in favor of TriMet. The remaining twenty-eight plaintiffs identified in TriMet's motion provided timely notice and, thus, summary judgment on those plaintiffs' state-law claims is denied.

Dated this 8th day of September, 2014.

Honorable Paul Papak
United States Magistrate Judge